# No. 26-1976

# United States Court of Appeals for the Ninth Circuit

MAYFAIR GOLD CORPORATION,
*Plaintiff-Appellant,*

v.

PATRICK EVANS ET AL.,
*Defendants-Appellees.*

Appeal from the United States District Court
for the District of Arizona
Case No. CV-24-03559-PHX-SHD
Hon. Sharad H Desai

## REPLY BRIEF OF APPELLANT MAYFAIR GOLD CORPORATION

John S. Summers
Matthew A. Hamermesh
Michael J. Masciandaro
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
1735 Market Street, 26th Floor
Philadelphia, Pennsylvania 19103
Telephone: 215.568.6200

Keith L. Hendricks
MOYES SELLERS & HENDRICKS
1850 North Central Avenue, Suite 1100
Phoenix, Arizona 85004
Telephone: 602.604.2141

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 3

A. The District Court Erroneously Disregarded the Evidence of Arizona's Substantial Relation to this Case .......... 3

B. The District Court's Consideration of the Public- and Private-Interest Factors Contains Multiple Errors .......... 6

1. The District Court Clearly Abused Its Discretion In Its Consideration of the First Three Private-Interest Factors .......... 6

2. The District Court Clearly Abused Its Discretion In Its Consideration of the Public-Interest Factors .......... 11

C. The District Court Erred in Its Handling and Assessment of the Witness-Related Evidence .......... 14

III. CONCLUSION .......... 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Boston Telecomms. Grp. v. Wood*,
588 F.3d 1201 (9th Cir. 2009) ........................................................*passim*

*Carijano v. Occidental Petroleum Corp.*,
643 F.3d 1216 (9th Cir. 2011)..................................................4, 7, 11, 12

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947) .......................................................................... 10

*L.N. Mgmt., LLC v. JPMorgan Chase Bank, N.A.*,
957 F.3d 943 (9th Cir. 2020)...................................................................1

*Lueck v. Sundstrand Corp.*,
236 F.3d 1137 (9th Cir. 2001) ............................................................7, 12

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981)........................................................................... 4

*Provenz v. Miller*,
102 F.3d 1478 (9th Cir. 1996) ..............................................................15

*Ravelo Monegro v. Rosa*,
211 F.3d 509 (9th Cir. 2000) .........................................................*passim*

*Tuazon v. R.J. Reynolds Tobacco Co.*,
433 F.3d 1163 (9th Cir. 2006) ......................................................*passim*

## Rules

Fed. R. Civ. P. 45 ...........................................................................16

## Other Authorities

Interprovincial Summonses Act, R.S.O. 1990, c. I.12 (Can.)........................16

Subpoena (Interprovincial) Act, R.S.B.C. 1996, c. 442 (Can.) .....................16

# I. INTRODUCTION

The response brief submitted by Defendants-Appellees Patrick and Bonnie Evans does not meaningfully address the issues presented in this appeal. Instead, it essentially summarizes the District Court's opinion, in many places simply restating verbatim that opinion. As a result, the brief does not engage with the arguments Mayfair Gold advanced in its opening brief. We are told, for example, that the District Court "properly" or "correctly" did or found something, *see, e.g.*, Evans Br. at 11, 13, 16, 17, 18, 19; that the District Court's consideration of the private- and public-interest factors was "a reasoned exercise of discretion," *id.* at 9; and that the District Court "carefully applied the two-step forum non conveniens framework," *id.* at 20. But we are never told *why* any of that is the case.

This failure to address Mayfair Gold's arguments could be held to constitute waiver. *See, e.g.*, *L.N. Mgmt., LLC v. JPMorgan Chase Bank, N.A.*, 957 F.3d 943, 950 (9th Cir. 2020) ("Failure to respond meaningfully in an answering brief to an appellee's argument waives any point to the contrary."). Indisputably, it reflects the lack of any serious opposition to the multiple critical errors that Mayfair Gold pointed out, including the District Court's oversight of the facts linking this case to Arizona, and thus its failure to afford Mayfair Gold's choice of forum any deference; the District

Court's legally and factually erroneous analysis of several public- and private-interest factors; and its abuse of discretion in its handling and consideration of witness-related evidence.

These errors are not mere quibbles with how the District Court reached its conclusion—they reflect the District Court's reliance on an "erroneous view of the law" and "a clearly erroneous assessment of the evidence," both of which constitute "a clear abuse of discretion." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 511 (9th Cir. 2000). The response brief's failure to address these errors underlines their significance and the need for correction from this Court.

Under this Court's precedent, even when an adequate alternative forum exists, the private- and public-interest factors must still "strongly favor dismissal" to warrant "disturb[ing] the plaintiff's original choice of forum." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1180 (9th Cir. 2006) (citation and internal quotation marks omitted). This applies even when the plaintiff is a foreign person or entity. "[A] plaintiff need not select the optimal forum for his claim." *Id.* (citing *Ravelo Monegro*, 211 F.3d at 514). As detailed in Mayfair Gold's opening brief and below, the District Court overlooked key facts, applied an incorrect view of the law in several instances, and denied Mayfair Gold the opportunity to respond to evidence

produced well after the close of briefing. The judgment should be vacated, and the case remanded for further proceedings.

## II. ARGUMENT

### A. The District Court Erroneously Disregarded the Evidence of Arizona's Substantial Relation to this Case

Repeating, word for word, the language of the District Court's opinion, the response brief asserts that Mayfair Gold's choice of forum "deserves less deference" because Mayfair Gold is a foreign corporation. Evans Br. at 8 (citation omitted); *see also* ER-8. The brief then, like the District Court's opinion, scarcely refers to deference again. This is a twofold error, unaddressed by the response brief.

For one, even if Mayfair Gold's choice of forum warrants less deference, that "is not the same thing as no deference." *Ravelo Monegro*, 211 F.3d at 514. But the District Court in practice afforded no deference at all. Despite intoning this Court's warning in *Ravelo Monegro*, the District Court gave no weight to Mayfair Gold's forum choice. It is not part of the District Court's (and, by extension, the response brief's) analysis.

Moreover, the District Court overlooked all the facts that distinguish this case from those in which the plaintiff's forum choice receives even "less" deference. As this Court has long held, the "[c]oncerns about forum shopping" that arise when a foreign plaintiff sues an American defendant in

American court—concerns that first led to the concept of reduced deference, *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)—“are muted in a case … where Plaintiffs’ chosen forum is both the defendant’s home jurisdiction, and a forum with a strong connection to the subject matter of the case.” *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1229 (9th Cir. 2011) (citing, among other cases, *Ravelo Monegro*, 211 F.3d at 513-14). In *Ravelo Monegro*, for example, this Court noted that although the bad actor’s bad acts were performed in the Dominican Republic, they were directed toward the United States: the plaintiff baseball players, although foreign, entered into the at-issue contracts with “the legitimate expectation that if they demonstrated sufficient skill they would be able to play professional baseball in the United States.” 211 F.3d at 514.

The facts here are even more compelling. In its Statement of the Case, the response brief asserts—without support or citation—that “[t]he alleged incidents about which Mayfair complains took place **in Canada**.” Evans Br. at 2 (emphasis in original). That’s plain wrong. The “incidents” at issue are Patrick Evans’s repeated, surreptitious, and unauthorized alterations of his Mayfair Gold employment agreement in the first few months of 2024. *See* ER-175-80. It is undisputed that Evans was in Arizona—and specifically

in and around his home in Scottsdale—when he undertook these actions. *See* ER-172, ¶ 6; ER-117 (admitting that Defendants "live in Arizona and lived there during the time period of the [alleged] events").

And it is not just Evans's location that links this case to Arizona. He committed these unlawful acts using electronic devices with him in Arizona and that are still located there. Further, the purpose of these secret edits was to provide himself a hefty payout in the event he was terminated as Mayfair Gold's CEO, as eventually did occur. ER-175, ¶ 22; ER-183, ¶ 40. Evans's actions were thus directed toward enhancing his post-Mayfair Gold life—in Arizona.[1] Put another way, Evans was illicitly feathering his own Arizona-based nest.

The District Court's failure to consider these facts, let alone give them any weight, was an abuse of discretion—"a clearly erroneous assessment of the evidence." *Ravelo Monegro*, 211 F.3d at 511. The response brief does nothing to challenge that conclusion.[2]

---

[1] The response brief repeats Defendants' assertion before the District Court that the termination payment was disbursed to Evans "in an investment fund in Ontario, Canada." Evans Br. at 2. Yet, as Mayfair Gold pointed out, there are reasons to doubt this. ER-144–45. Nor did the District Court credit or rely upon this assertion. And, in any event, it is irrelevant: Evans intended to live, and has lived, his post-Mayfair Gold life in Arizona.

[2] The response brief also implies that Mayfair Gold is forum shopping, speculating that "Mayfair seemingly chose to file this lawsuit in Arizona because a prior action in British Columbia, from which Mr. Evans was

### B. The District Court's Consideration of the Public- and Private-Interest Factors Contains Multiple Errors

The same goes for the multiple flaws with the District Court's assessment of the private- and public-interest factors. The response brief simply repeats the District Court's findings and then declares it all "a quintessential exercise of discretion." Evans Br. at 20. The brief does not attempt to justify this assertion or to address Mayfair Gold's arguments to the contrary. The silence is notable because, as Mayfair Gold has emphasized, the District Court committed several critical errors in its evaluation of both sets of factors.

#### 1. The District Court Clearly Abused Its Discretion In Its Consideration of the First Three Private-Interest Factors

The District Court held all seven private-interest factors[3] to support dismissal or to be neutral. ER-10-17. While Mayfair Gold agrees that the sixth and seventh factors are neutral, of the other five, the first three

---

dismissed, did not appear to be a 'friendly' jurisdiction for Plaintiff's claims against him." Evans Br. at 2. Defendants here are either confused or obfuscating. The "prior action" referred to was not even filed by Mayfair Gold. *See* ER-184, ¶ 45.

[3] The seven factors are: "(1) the residence of the parties and witnesses, (2) the forum's convenience to the litigants, (3) access to physical evidence and other sources of proof, (4) whether unwilling witnesses can be compelled to testify, (5) the cost of bringing witnesses to trial, (6) the enforceability of the judgment, (7) any practical problems or other factors that contribute to an efficient resolution." *Tuazon*, 433 F.3d at 1180.

definitively favor non-dismissal. (The fourth and fifth factors—the witness-related factors—are addressed in Section II.C, *see infra* pages 14-17.)

*First*, the District Court's failure to afford Mayfair Gold's choice of forum any deference is most glaring as to the first factor, the residence of the parties.[4] The District Court wrote:

> Mayfair Gold is a Canadian corporation organized under the laws of British Columbia, with its principal place of business in Ontario and its operations and principal assets located in Canada. It nonetheless prefers litigation in Arizona and, as noted above, its choice to sue outside its home forum is entitled to reduced deference. Defendants are residents of Arizona but would prefer litigation in Canada. The residence of the parties is a neutral factor.

ER-10 (citation omitted). Remarkably, while the District Court acknowledged that Mayfair Gold's forum choice is entitled to some level of deference (ignoring, as noted, all the connections to Arizona), the Court then gave that choice equivalent weight to Defendants' preference for Canada. This is clear legal error.

---

[4] As noted in Mayfair Gold's opening brief, beginning in *Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001), the first private-interest factor has been said also to include "the residence of … witnesses." But this is not supported by the authority *Lueck* cites, and in practice this Court has considered witness-related issues together. *See Carijano*, 643 F.3d at 1230; *Tuazon*, 433 F.3d at 1181; *Boston Telecomms. Grp. v. Wood*, 588 F.3d 1201, 1207, 1208-10 (9th Cir. 2009).

Under this Court's precedent, even "quintessentially foreign plaintiffs" are entitled to some deference on this factor, and a district court errs when it acknowledges the need to afford deference to the plaintiff's forum choice, but then "proceed[s] to hold that the private interest factor of the parties' residences [i]s neutral." *Boston Telecomms. Grp. v. Wood*, 588 F.3d 1201, 1207 (9th Cir. 2009). That is exactly what we have here. The response brief utterly fails to address this point. *See* Evans Br. at 11-12.

*Second*, the District Court committed a similar error in its evaluation "the forum's convenience to the litigants." *Tuazon*, 433 F.3d at 1180. The District Court held, "Canada presents a more convenient forum for the parties" because, although Evans resides in Arizona, "the dispute concerns a Canadian corporation, events centered in Canada, and agreements governed by Canadian law." ER-13. This was both legal and factual error. It was legal error because the factor assesses *the* forum's—i.e., Arizona's—convenience to the litigants. This Court's precedent is clear that "a plaintiff need not select the optimal forum for his claim." *Tuazon*, 433 F.3d at 1180; *see also Ravelo Monegro*, 211 F.3d at 514 (observing that *forum non conveniens* is not "a doctrine that compels plaintiffs to choose the optimal forum for their claim"). The question is not which of the possible fora is *more* convenient; rather, it is whether the chosen forum is convenient. And

on that score the answer is straightforward: Defendants reside in Arizona, and Mayfair Gold has chosen to litigate in Arizona—a choice, as noted, entitled to deference.

The District Court also committed factual error because its three considerations—that "the dispute concerns a Canadian corporation, events centered in Canada, and agreements governed by Canadian law"—are either wrong or beside the point. ER-13. The events at issue in this case—Evans's surreptitious alterations of his employment agreement—took place in Arizona, not Canada. The fact that Mayfair Gold is a Canadian company has no bearing on the forum's convenience because Mayfair Gold has chosen to litigate in Evans's home forum, Arizona. Similarly, the bulk of Mayfair Gold's claims concern Evans's fraudulent actions and not the interpretation of a contract.

The response brief ignores all of this. It merely repeats the District Court's language—again virtually word for word—and announces that "the District Court correctly found that litigating in Canada is convenient for Mayfair, and Defendants have consented to the jurisdiction of the Canadian courts." Evans Br. at 13. The brief appears to forget—just as the District Court did not apprehend—that this factor assesses *Arizona's* convenience to

the litigants and, in any event, the burden is on *Defendants* to show that Arizona is not convenient.

*Third*, the location of "physical evidence and other sources of proof" definitively favors Arizona. *Tuazon*, 433 F.3d at 1180. The District Court, however, held this factor neutral because (1) much evidence is electronic; and (2) it conditioned its dismissal on Defendants making available for inspection all relevant "laptops, phones, or other electronic devices" located in Arizona. ER-14. A district court may not slant its assessment of a factor by conditioning away a relevant consideration. This factor assesses "the ease of access to physical evidence and other sources of proof" between the two at-issue fora. *Boston Telecomms.*, 588 F.3d at 1208; *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) (identifying as a factor "the *relative* ease of access to sources of proof" (emphasis added)). It is obvious that, between Arizona and British Columbia, the former provides greater ease of access to the relevant physical evidence. The District Court clearly abused its discretion in avoiding this conclusion, and the response brief (once again) does nothing to defend or justify this error. *See* Evans Br. at 14.

### 2. The District Court Clearly Abused Its Discretion In Its Consideration of the Public-Interest Factors

The District Court's evaluation of the public-interest factors was even more erroneous. It held that four of the five factors[5] favor dismissal. ER-18-20. To the contrary, *none* points to dismissal and three in fact support the case remaining in Arizona.

*First*, the District Court committed clear legal error in its consideration of "the local interest in the lawsuit." *Tuazon*, 433 F.3d at 1181. It again engaged in a kind of balancing, writing, "although both Arizona and Canada have some interest in the litigation, Canada's interest is substantially stronger." ER-18. But this Court's precedent plainly holds that, on this factor, "we ask only if there is an identifiable local interest in the controversy, not whether another forum also has an interest." *Tuazon*, 433 F.3d at 1182; *see also Carijano*, 643 F.3d at 1232-33 & n.3; *Boston Telecomms.*, 588 F.3d at 1212. And, as the District Court acknowledged, Arizona has an interest in the litigation. Again: Evans committed the at-issue acts in Arizona, on devices located in Arizona, with the goal of

---

[5] These are: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Tuazon*, 433 F.3d at 1181. The District Court held the fourth factor to be neutral, *see* ER-19, and Mayfair Gold does not contest that conclusion.

providing himself a termination payment that he would control and enjoy from Arizona. *See Boston Telecomms.*, 588 F.3d at 1212 (noting that a state "has an interest in preventing fraud from taking place within its borders" (internal quotation marks omitted)). The response brief limply says the District Court "properly reasoned" that Canada has a stronger interest. Evans Br. at 18. To the contrary: this was far from proper legal reasoning. This factor favors non-dismissal.

*Second*, the District Court committed clear legal error in holding that the second public-interest factor—"familiarity with the governing law," *Tuazon*, 433 F.3d at 1181—favors dismissal because "at least some issues will involve British Columbia law." ER-19. Nothing in this Court's case law supports such a conclusion. Even in *Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001)—upon which the District Court relies—this Court said (in dictum) only that when a choice-of-law inquiry points to the application of foreign law to a case, dismissal is favored, *id.* at 1148 n.6. But the District Court did not conduct a choice-of-law analysis here, and this Court's precedent indicates that when there are "reasonable explanations" for either law applying, the factor should be held neutral. *Carijano*, 643 F.3d at 1233. The District Court should have followed that here. The response brief

does not address this; once again, it robotically restates the District Court's flawed analysis. *See* Evans Br. at 18.

*Third*, on the third and fifth public-interest factors—"the burden on local courts and juries" and "the costs of resolving a dispute unrelated to a particular forum," *Tuazon*, 433 F.3d at 1181—the District Court shifted from legal error to erroneous assessment of the evidence. Here again, it relied on the notion that "the connection of this case to Arizona is minimal." ER-19. (For its part, the response brief merely repeats this exact point without any justification or analysis. *See* Evans Br. at 19.) That's wrong for all the reasons stated above: Evans committed the relevant actions in Arizona, on devices located in Arizona, with the goal of enhancing his life in Arizona after the termination of his employment by Mayfair Gold. A state "has an interest in preventing fraud from taking place within its borders." *Boston Telecomms.*, 588 F.3d at 1212 (internal quotation marks omitted).

Thus, for the same reason that Arizona has a definitive interest in this litigation, it is not unduly burdensome to ask an Arizona court and Arizona jurors to decide this case. The interest of the plaintiff's chosen forum need not "be unique or not shared with any other forum." *Id.* The District Court clearly abused its discretion in ignoring these facts.

* * *

In short, of the twelve private- and public-interest factors, six point toward non-dismissal—the first three private factors and the first, third, and fifth public factors—and four are neutral—the sixth and seventh private factors, and the second and fourth public factors. The response brief does nothing to justify the District Court's abuse of discretion in failing to reach this conclusion.

### C. The District Court Erred in Its Handling and Assessment of the Witness-Related Evidence

This leaves the witness-related factors: the fourth and fifth private-interest factors—"whether unwilling witnesses can be compelled to testify" and "the cost of bringing witnesses to trial"—together with the "residence of … witnesses" portion of the first factor. *Tuazon*, 433 F.3d at 1180. On these, the response brief again repeats, essentially verbatim, the District Court's opinion. *See* Evans Br. at 12-13, 14-16. It does nothing to address the twofold error pointed out by Mayfair Gold.

*First*, with respect to the fourth private-interest factor, the District Court credited evidence of witness unwillingness generated by a highly unusual and prejudicial process. At no point during substantive briefing on their motion to dismiss did Defendants provide any evidence to support their assertions that witnesses material to their case were unwilling to

testify in the United States. In fact, at the oral argument on February 18, 2026—nearly a year after Defendants filed their motion—Defendants' counsel admitted, "I don't have anything right now." ER-69:22. So the District Court gave Defendants another shot: it ordered supplemental briefing in which Defendants could attach declarations of five witnesses stating their unwillingness. ER-8. But the District Court barred Mayfair Gold from responding to any such declarations. ER-41-47; ER-39-40. Defendants then attached only four such declarations—all identical—and Evans merely stated that the fifth witness was unwilling.

The District Court credited all of this. It accepted not only the four declarations but also Evans's representation that the fifth witness was unwilling to testify in the United States. ER-15-16. In doing so, moreover, it expressly refused, for a second time, to permit Mayfair Gold the chance to respond, despite acknowledging Evans's problematic communications with potential witnesses. ER-16.

Under this Court's case law, Mayfair Gold should have been given the opportunity to respond to this new evidence. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). The District Court erred in refusing Mayfair Gold this opportunity—especially in light of the evidence (which the District Court credited) that Evans was improperly pressuring witnesses

to declare unwillingness. *See* ER-15. For example, if permitted to press the Declarants, Mayfair Gold likely could have demonstrated that they were motivated by avoiding Arizona because of their complicity in Evans' wrongdoing. *See* ER-74:2-8. The response brief makes no effort to contest these points.

*Second*, the District Court erroneously evaluated the key facts related to witness residence and "the cost of bringing witnesses to trial." *Tuazon*, 433 F.3d at 1180. The evidence is clear that all potential material witnesses, for both sides, are scattered across North America. *See* ER-120-22 (Defendants' witnesses); ER-142; ER-71:24 to ER-72:1; ER-73:3-4. The District Court overlooked this because it failed to consider any of the burdens on compelling testimony and travel within Canada.

The District Court firstly appears to have assumed, erroneously, that compulsory process within Canada is the equivalent of Federal Rule of Civil Procedure 45. *See* ER-12; ER-16. It is not. Any subpoena to a witness located outside British Columbia must be accompanied by a certificate issued by a British Columbia judge, and then adopted by the court of the province in which the witness is located. *See* Subpoena (Interprovincial) Act, R.S.B.C. 1996, c. 442 (Can.); Interprovincial Summonses Act, R.S.O. 1990, c. I.12 (Can.). This matters here because three of the five witnesses

identified by the District Court as material to Defendants' case are located in Ontario. *See* ER-15; ER-120-22.

The District Court further erred because it did not consider—at all—the costs of travel within Canada. *See* ER-12. The duration of a flight from Toronto, Ontario, to Vancouver, British Columbia, is roughly equivalent to that of a flight from Toronto to Phoenix. *See* Opening Br. at 53. Further, there is no evidence in the record that the Canadian witnesses would face any greater burden because of international travel—for example, lack of a passport or some other complicating circumstance. While it is true that Mayfair Gold's United States-based witnesses "would face travel burdens in either forum," ER-12, the same is also true of most of Defendants' witnesses.

On these factors, then, the District Court ignored key considerations that undermine its analysis. At a minimum, the District Court should have permitted Mayfair Gold to respond to Defendants' declarations, and it should have weighed these witness issues against all the other factors favoring non-dismissal. Its failure to do this was a clear abuse of discretion. And because the response brief is nothing more than a rubber stamp of the District Court's opinion, it fails entirely to address these important points.

## III. CONCLUSION

For the foregoing reasons, this Court should vacate the District Court's order and remand this case for the District Court to evaluate all the pertinent evidence in light of the appropriate amount of deference due to Mayfair Gold's choice of forum and the correct legal standard on the private- and public-interest factors.

Respectfully submitted,

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

DATED: October 26, 2026

/s/ *John S. Summers*
By: John S. Summers
Matthew A. Hamermesh
Michael J. Masciandaro
1735 Market Street, 26th Floor
Philadelphia, PA 19103

MOYES SELLERS & HENDRICKS

Keith L. Hendricks
1850 North Central Avenue, Suite 1100
Phoenix, Arizona 85004
Telephone: 602.604.2141

*Counsel for Appellant*
*Mayfair Gold Corporation*

## CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. P. 32(a)(7)(B) & CIRCUIT RULE 32-1

I hereby certify that the foregoing brief is in compliance with Fed. R. App. P. (32)(a)(7)(B) and Ninth Circuit Rule 32-1. The brief is double spaced, with quotations of more than two lines being single spaced and indented, and footnotes being single spaced. All margins are 1 inch wide. The brief is printed in proportionately spaced Georgia font, size 14. The word count is 3,872. The brief consists of 18 pages.

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system which will send notification of such filing to all counsel of record in this case.

/s/ *John S. Summers*
John S. Summers